UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DENISE A. DREIFUERST,

        Plaintiff,

v.                                                                               Case No. 18-cv-434-pp

PRESIDENT WILLIAM J. CLINTON, *et al.*,

        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 4), DENYING AS MOOT PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO FILE MAGISTRATE JUDGE CONSENT FORM (DKT. NO. 4), DENYING PLAINTIFF'S PETITIONS AND REQUESTS (DKT. NO. 6, 7, 11, 17, 24), DENYING ANY PROPOSED AMENDMENTS (DKT. NO. 9, 10, 12-14, 23, 25) AND DISMISSING CASE AS FRIVOLOUS**

---

      In 2018, the plaintiff, representing herself, filed two lawsuits in this court, suing a total of ninety-two defendants. The court dismissed the first complaint as frivolous. <u>Dreifuerst v. Obama, *et al.*</u>, Case No. 18-cv-428 (E.D. Wis.). This case suffers from the same defects.

      The plaintiff filed this complaint on March 19, 2018, suing President William J. Clinton along with fifty-two other defendants. Dkt. No. 1. She also filed a motion asking for leave to proceed without prepaying the filing fee. Dkt. No. 2. The next day—March 20, 2018—the plaintiff filed an "amendment." Dkt. No. 3. The day after that, she filed a motion asking the court to appoint counsel and asking for an extension of time to file the magistrate judge consent form. Dkt. No. 4. (She filed the consent form on April 5, 2018. Dkt. No. 5.) The

1

plaintiff since has filed multiple requests, petitions, proposed amendments, and letters (many of them the same documents she filed in Case No. 18-cv-428).

Although the court finds that the plaintiff does not have enough money to pay the filing fee, it will not allow her to proceed with this case. The court dismisses the case as frivolous, denies the plaintiff's motion for appointment of counsel, denies as moot her request for extension of time to file a magistrate consent form, denies her various requests and petitions and denies all requests for further amendments.

**I.     Motion to Proceed Without Paying the Filing Fee**

The court may allow a litigant to proceed without prepayment of the filing fees if two conditions are met: (1) the litigant is unable to pay the filing fee; and (2) the case is not frivolous nor malicious, does not fail to state a claim on which relief may be granted, and does not seek monetary relief against a defendant that is immune from such relief. 28 U.S.C. §§1915(a) and (e)(2).

The court finds that the plaintiff does not have sufficient income to pay the filing fee. The plaintiff is single and unemployed. Dkt. No. 2 at 1. She receives $827 each month in Social Security benefits plus $56.76 from a pension, totaling $883.76 per month. Id. at 2. The plaintiff has $670 in a bank account but does not own a vehicle or any other property of value. Id. The plaintiff says that her expenses include $50.04 per month for her cell phone bill and the cost of food; she does not explain how much she spends on food.

Id. at 2-3. She says she has no other expenses because of "kickbacks to Clinton/Obama." Id. at 3.

While the plaintiff did not provide the court with enough information to determine how much disposable income she has each month, the court concludes from her limited and fixed income, and the fact that she has no assets, that the plaintiff cannot afford to pay the $350 filing fee and the $50 administrative fee.

## II. Screening of the Plaintiff's Complaint

Even when a court concludes that a plaintiff does not have enough money to pay the filing fee, §1915(e)(2)(B) requires a court to dismiss an unrepresented plaintiff's case at any time if the court determines that it "(i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." District courts "screen" complaints filed by unrepresented plaintiffs to decide whether they fall into any of these categories.

The federal notice pleading system requires a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff need not plead specific facts, and her statement need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Even so, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S.

3

at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations must rise above a speculative level. Twombly, 550 U.S. at 555 (citation omitted).

The court may dismiss a claim as legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989). At the screening stage, the court must accept the complaint's factual allegations as true and draw all reasonable inferences in favor of the plaintiff, the court can "pierce the veil of the complaint's factual allegations" and need not "accept without question the truth of the plaintiff's allegations." Denton, 504 U.S. at 32. For example, the Supreme Court has explained that a court may dismiss a claim as frivolous if it is "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," "wholly incredible," or "based on an indisputably meritless legal theory." Id. at 32-33.

A. Facts Alleged in the Complaint

The plaintiff's complaint is filed on the five-page form the Eastern District of Wisconsin provides to non-prisoners who are filing without lawyers. The plaintiff's statement of claim reads as follows:

> President Clinton abused his presidential powers and committed federal crimes to receive kickbacks from those he (Clinton) served. It was not the American people. He (Clinton) used the military, intelligence, police and other governmental federal agents (agencies) as well as influential democrats to build up the democrats, as well as his cronies, power base by extortion, [research done by me . . . as included in this claim] bombings, assassinations, [Kohler threat; OK City bombing; Removal of

4

> Tecumseh Products from WI; New York Twin Towers threat; Pentagon threat; Princess Diana threat], organized acts of crime that was played out by the defendants that I am including. I will list each defendant and want them listed as coming under the jurisdiction of the Federal U.S. District Court vs. Denise A. Dreifuerst. These individuals, agents, educational institutions, military could have used means at their disposal to stop this organized crime spree. They didn't.
>
> 1994-1995 I had to get protection for Kennedy's, Kings, Hoffa, and others as this act of aggression was a repeat of the 1963-64 killing spree. [Back then they said it was Russia, CIA, Malcolm X, King, Hoffa, LBJ and others.] The killing spree was for patent material, start up corporations, building up of the democrat base via these corporations, educational institutions, etc. These educational institutions should loose [sic] their license and federal monies.
>
> This is a pattern done by the democrats for political, financial, control; as well as eliminating their democratic colleagues who may differ in opinion. Blood was shed. Families lost members that were dear to them. These bombing and assassinations were used to cover up the true nature of control, power and financial gains, business start-ups by the democrats. Meanwhile, each agency (federal) was left to deal with the tragedy that they experienced. This included the FBI, Military, England, etc. This belongs in the Federal Court System. I want to press charges and prosecute each actor involved in this organized crime spree.

Dkt. No. 1 at 3. The plaintiff marked the box indicating that she is suing under 28 U.S.C. §1331 and is suing each defendant individually, "but acting together as a unit of extortion." Id. at 4.

For relief, the plaintiff asks:

> that charges be brought for corruption of Federal Laws. I am showing a pattern of organized, synchronized crime. I will address relief wanted at a later date as I have to absorb and process the malicious acts taken against me and my family as well as other individuals and their familys. I can't process this all at once. I ask for the courts understanding in this issue as well as I am representing myself as I don't want anyone else killed.

Id. at 4.

The plaintiff appears to allege that events dating back to 1963 can be linked to President Clinton and the democrats. The complaint itself contains no specific dates, only spans of years, and it does not identify any of the malicious acts taken against the plaintiff, but she attached sixty-seven handwritten pages of allegations describing an assortment of actions by over fifty-two people. Dkt. No. 1-1. She organizes the allegations by defendant. At the top of each new set of allegations, the plaintiff identifies the defendant and his or her address, then lists for each the actions of that defendant. The defendants range from President Clinton to nuns to the Encyclopedia Britannica to law enforcement agencies to Air Force bases to doctors to churches to universities to retail stores to the NAACP to charities to libraries to legislators to federal agencies to the plaintiff's ex-husband. One set of allegations involves a dead person; another involves someone identified only as "Louie."

The attachment says that President Clinton was the mastermind behind the criminal conspiracy. Dkt. No. 1-1 at 62-65. He authorized the Navy Blue Angels against the plaintiff; instructed President Carter to kick the plaintiff out of Denton, Texas; used police blocks and military personnel on both sides of the road to block the plaintiff; forced her into homelessness; used military psychological torture on the plaintiff; threatened to close Tecumseh Products; authorized action taken against the plaintiff's son and went after the plaintiff's daughter; used water resources to control the Bush family in Texas; divided people with racial tensions; created an unsafe environments for professions; extorted research and may have authorized Princess Diana's death. Id. at 64.

6

The plaintiff also accuses President Clinton of eliminating political opponents. Id. at 65.

The plaintiff names several religious organizations and leaders. The St. Agnes Sisters provided the plaintiff with an excellent education. Dkt. No. 1-1 at 1. At some point, however, the Sisters told the plaintiff that she was President J.F. Kennedy (and Kennedy was shot). Id. The plaintiff named Father Caroll Straub as a defendant after allegedly crying during mass because he was being blackmailed by the Clinton Administration. Id. at 14, 15. The plaintiff named the Immaculate Conception Catholic Church in Sheboygan because they sent police to the plaintiff's house for communion. Id.

The plaintiff named businesses and nonprofit organizations, beginning with the Encyclopedia Britannica. Id. at 3. In 1988, a man selling Britannica Encyclopedias came to the door in St. Cloud, Wisconsin. Id. This man later served in the Clinton and Obama administrations. Id. The plaintiff applied for a job at J.C. Penney, where she came in contact with Beals in 1997 and Shaunta who identified numbers that referred to the USS Cole before it was attacked. Id.at 23. Someone at J.C. Penny told the plaintiff to watch television on break; she later learned from providers at the Milwaukee County Mental Health Complex (also a defendant) that she had received messages through the television. Id. at 24, 26.

The plaintiff alleges that she was abused at the Guest House, a shelter on 13th Street in Milwaukee, by women who would get close to her face and scream and use body posturing to signify a physical attack. Id. at 27. After the

plaintiff was kicked out of the Guest House, she went to General Mitchell International Airport where she watched women from the Guest House board planes and fly off. Id. at 28. The plaintiff got stuck in the door frame and was forced to leave the airport early. Id.

The NAACP Milwaukee branch allegedly sent the plaintiff to the Marquette Law Library after the plaintiff contacted the office to report the abuse of black men. Id. at 32. Meanwhile, the Salvation Army wanted the plaintiff to move into public housing, but the plaintiff knew the Salvation Army was being used to further the careers of the democrats. Id. at 36, 45. The plaintiff went to the Milwaukee Public Library where they refused to help after she reported that her notes were being sent to another computer. Id. at 37.

The plaintiff sued the Sheboygan Police Department, the Milwaukee Police Department, and the General Mitchell Police Department. In 2015, the plaintiff wanted the Sheboygan Police Department to arrest John Ross because he allegedly put child pornography on the plaintiff's computer. Id. at 4. The police didn't arrest him. Id. The Milwaukee Police Department refused to help the plaintiff and allegedly told the plaintiff to arrest herself. Id. at 31. The General Mitchell International Airport Police allegedly confiscated her bags but released her without providing any help. Id. at 29.

The individuals named by the plaintiff seem to have little or no connection to each other, ranging from government officials to family members. She alleges that Jane Lorge worked as an IRS agent under Clinton. Lorge allegedly gave the plaintiff communion at the Immaculate Conception Church

8

and the plaintiff could not walk afterwards—the plaintiff saw a white light and died. Id. at 6. Lorge allegedly obtained a copy of the plaintiff's prototype of Facebook and the International Space Station. Id. at 7. Jacque Sexton, who lives in Norman, Oklahoma, and Mike Kohout also used the plaintiff's computer to access the Facebook prototype. Id. at 17, 19. Shaun Enders, who lived with the plaintiff in Appleton, Wisconsin for a few weeks in 1995-1996, used the plaintiff's computer with the Facebook prototype (which didn't work after he was done). Id. at 18.

Rellis Beals allegedly raped and threatened to kill the plaintiff in 1997 when he stole her written work and put it on public radio. Id. at 9. In 2018, Beals appeared in a pawn shop in Madison, Wisconsin dressed as a police officer. Id. Beals may have ordered a medical hit by Dr. Stephen Kunkel, a neurosurgeon in Sheboygan. Id. Dr. Kunkel allegedly cried as he gave the plaintiff a spinal tap in his office surrounded by young girls. Id. at 11. The plaintiff had to tell him to get a glass of orange juice to regain his composure but he injected something in her spine. Id.

Defendant "Louie" provided the plaintiff with wrong information at UW Sheboygan and allegedly threatened to take her to Immaculate Conception Church (the plaintiff did not agree with Father Straub's methods of racial integration). Id. at 13. Defendant Robert Tilley, who was Kennedy's cousin, allegedly invited the plaintiff to stay with him but left when her weight changed from 113 to 165 in an hour. Id. at 33. Tilley accompanied the plaintiff to the federal courthouse for a filing in 2001. Id. at 34. Defendant Royal Starr Sperry

9

allegedly picked the plaintiff up at her apartment for nine years while she helped him with housekeeping. Id. at 50. The plaintiff speculates that the $100,000 that went missing after his death may have been protection money. Id.

The plaintiff contacted government officials for help, including Russ Feingold, Herbert Kohl and James Sensenbrenner, Jr. Id. at 40-42. The plaintiff links other officials, such as Les Aspin, Jr., to the "killing spree for extorted research" because he attended MIT and Yale. Id. at 57. Janet Reno allegedly covered up all illegal, synchronized and organized crime in Milwaukee. Id. at 58. John Ashcroft allegedly failed to "review past attacks on U.S. soil meticulously" and failed to review illegal activity in Milwaukee. Id. at 59. The NSA Director in 1993 allegedly placed a van with surveillance equipment in the plaintiff's neighborhood. Id. at 60. President Clinton's Director of Intelligence allegedly isolated the plaintiff, took her children away and participated in the plaintiff's homelessness for extorted research. Id. at 61.

The plaintiff sued her ex-husband (Neil Dreifuerst) at the time of the organized crime sprees, alleging that he gave Lorge access to her computer and said that she was mentally ill. Id. at 16. She also named Mary and Dan Dreifuerst in an "amendment," along with Dawn Shumann-Keithly, Diane Czerniak, Berta Cruz and Roger Duncan. Dkt. No. 3 at 1-9. All of these individuals allegedly participated in efforts to obtain the plaintiff's "extorted material." Id.

The plaintiff named a number of academic institutions, including UW Oshkosh, UW Madison, Marquette University, Milwaukee Area Technical College, MIT, Boston University, and Harvard. The allegations against UW Oshkosh date back to 1995-96 when she was allegedly abused by a political science professor and another individual who wouldn't help her with a "TI 81 calculator hookup." Dkt. No. 1 at 20. UW Madison allegedly sent a letter asking the plaintiff to attend but then deleted the plaintiff from everything associated with the university. Id. at 22. While at the Marquette University library, people allegedly tried to steal the plaintiff's notes and would stalk her. Id. at 38. The plaintiff tried to use the computer at MATC but two agents allegedly unplugged the computer and she saw Tim McVeigh standing a short distance away. Id. at 39. MIT, Boston University and Harvard allegedly received and benefited from the plaintiff's "extorted research." Id. at 52-54.

The plaintiff tried contacting the Peterson Air Force Base in Colorado Springs in 1995 and 2017 and sent them "extorted research" and information from Clayton, Oklahoma. Id. at 8. The Air National Guard 128 Air Refueling Wing allegedly used psychological torture on the plaintiff. Id. at 30.

Agencies like the Federal Bureau of Investigation allegedly provided no help when she contacted them. Id. at 25, 46. The Department of Health and Human Services should have realized that she was not mentally ill; the plaintiff believes they didn't care. Id. at 43. Dr. Knoedler at the Department of Health and Human Services allegedly wasn't interested in helping her even after she contacted him with concerns about another patient who need a drug change.

11

Id. at 44. The plaintiff lived in housing provided by the Sheboygan Housing Authority in 1999, and 2004-205, but residents were allegedly victimized by outsiders. Id. at 47. Sheboygan Housing Authority Executive Director, Joe Rupnik, allegedly "blew up" at the plaintiff after she expressed concerns about another resident and ignored the high rates of suicide. Id. at 48. Sheboygan Housing Authority Service Coordinator, Char Neitzel-Goostree, allegedly refused to listen to concerns and wasn't interested in suicide awareness classes. Id. at 49.

    B.    Analysis

There are several reasons that the court must dismiss this complaint. First, the plaintiff has sued some fifty-two unrelated individuals on unrelated claims. Federal Rule of Civil Procedure 18(a) allows a plaintiff to put in a single complaint all the claims that she has against a party. If a person has ten claims against defendant Smith, she can put all ten of those claims in a single complaint against defendant Smith. She cannot include other defendants in that complaint, however, unless she has a claim against all the defendants "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and there is a question of law or fact common to all the defendants. Fed. R. Civ. P. 20(a). Even liberally construing the complaint, the only question of fact common to all the defendants is the plaintiff's belief that they are democrats or that they are affiliated with President Clinton—and a few defendants do not even fit into those categories.

Second, the plaintiff has not provided the "who, what, when, where and why" information on every claim against every defendant. She often fails to provide dates for the events she alleges, or provides only the span of years during which the alleged events occurred. Often she fails to explain how the actions of a particular defendant harmed her. Sometimes she doesn't identify who harmed her.

Third, many of the actions the plaintiff alleges do not constitute violations of federal law or the federal Constitution. She alleges that one defendant gave her something that made her weight balloon from 113 pounds to 165-170 pounds in an hour, and that this scared her. Dkt. No. 1-1 at 33. She says that while she was using a computer at Milwaukee Area Technical College, two agents walked up, and she saw Timothy McVeigh (one of the Oklahoma City bombers) standing there, unattended; she interpreted this as a threat, organized by President Clinton and "his goons." Id. at 39. She suggested to a service coordinator at the Sheboygan Housing Authority that suicide awareness classes be provided. Id. at 49. She alleges that the Massachusetts Institute of Technology received extorted research from her and prospered from it while she suffered. Id. at 52. Many of her allegations involve claims that she told people or organizations various things, but that they did not help her. None of these claims allege violations of the Constitution or laws of the United States.

Fourth, many of the plaintiff's claims are incredible. Allegations of an organized crime syndicate run by President Clinton—that he caused the attack

13

on the Pentagon by claiming he did not inhale, had her neighborhood surveilled, caused gas leaks, threatened the Milwaukee Archdiocese—are fantastical. The plaintiff claims that she tried to protect Jimmy Hoffa's son from a 1963-64 killing spree involving "[John F.] Kennedy, [Dr. Martin Luther] King, [Robert] Kennedy, Hoffa." Dkt. No. 1-1 at 68. She alleges that she saw Oklahoma City bomber Timothy McVeigh at MATC; while she does not provide a date for this alleged event, McVeigh has been dead since 2001. She alleges that a priest told her to go watch the Milwaukee Bucks practice at the practice center in St. Francis Wisconsin; she says she did that, and contacted Senator Herb Kohl for help, but she never got feedback. Id. at 41. She alleges that she provided the FBI with "threats of bombing to Kohler; Oklahoma City Bombing; Tecumseh Products removal from Wisconsin; killing of Princess Dianna; USS Cole attack; New York City Twin Towers attack; Pentagon attack, etc.," but that all of it was covered up by Clinton and President Obama. Id. at 46. The court conceded in the plaintiff's other case that the plaintiff appears to be struggling, and that she may be ill, but it concluded that this did not require the court to accept "fantastic or delusional factual allegations." Holland v. City of Gary, 503 Fed. App'x 476, 477 (7th Cir. 2013) (citing Neitzke, 490 U.S. 319 at 330 (1989)).

    Finally, the complaint and its attachment do not constitute the "short and plain statement" required by Federal Rule of Civil Procedure 8(a)(2). A seventy-two-page complaint against fifty-two defendants is neither short nor plain.

14

### III. Plaintiff's Petitions and Proposed Amendments

The day after she filed the complaint, March 20, 2018, the plaintiff filed a proposed amendment that added six defendants. Dkt. No. 3. Civil Local Rule 15(a) requires that a pleading reproduce the entire pleading as amended; it may not incorporate any prior pleading by reference. Civ. L.R. 15(a) (E.D. Wis.).

The plaintiff filed additional proposed amendments on April 9, 11, 12, 13, 16 and 25 and May 4, 2018. Dkt. Nos. 9, 10, 12, 13, 14, 23 and 25. Most of the proposed amendments asked to make the same amendments in both this case and Case No. 18-cv-428. None of the amendments consisted of a complete amended complaint; each one discussed the defendants it proposed to add, or the new relief it sought to request.

The plaintiff had the right to amend her complaint once as a matter of course. Fed. R. Civ. P. 15(a)(1). That one amendment was the one she filed on March 20, 2018. Dkt. No. 3. It did not comply with the federal or the local rules, because it did not reproduce the entire pleading. The plaintiff did not ask the court's permission to file the seven subsequent proposed amendments, as required by Rule 15(a)(1)(B). Even if the plaintiff had asked the court's permission, the court would not have allowed her to amend, because the amendments suffer from the same defects as the original complaint.

### IV. Plaintiff's Petitions and Requests

On April 6, 2019, the plaintiff filed a "request" to stop all bus drivers from interfering with her travel. Dkt. No. 6. She filed an identical request in Case No. 18-cv-428. The MTCS bus drivers were allegedly rerouting buses and

giving wrong information, which the plaintiff believes was a planned event to discourage her from filing cases. Dkt. No. 6. The plaintiff simultaneously asked the court to enjoin the people who say they are security and to require Senator Johnson's office to produce all information regarding those targeted via racketeering to obtain research. Id.

Three days later, the plaintiff filed a petition for equal protection under the Fourteenth Amendment, citing "medical hits" at the St. John's Cathedral Shelter and the use of biomedical technology against her. Dkt. No. 7.

On April 11, 2018, the plaintiff asked the court to stop parties involved from taking her phone off-line. Dkt. No. 11. She also asked the court to provide the names of individuals staying at the homeless shelters because she want to know their connection to her. Id.

One week later the plaintiff filed a letter addressed to Senator Johnson, asking that his office turn over all of her correspondence for purposes of Case Nos. 18-cv-428 and 18-cv-434. Dkt. No. 17. She also filed a petition addressed to Judge Adelman, asking to have Robert Mueller "reclused" in her cases because he covered up original threats, attacks and killings. Dkt. No. 19.

The plaintiff's most recent request, received on May 4, 2018, asks the court to stay the case until she has an attorney because the "wrong drugs were administered, the wrong diagnosis, as a racketeering method to absolve the vested defendants. Dkt. No. 25. She attached a patient complaint form created by the Mental Health Center of the Community Memorial Hospital in Menomonee Falls, Wisconsin, in which she complains of receiving the wrong

medication. Id. at 2. She also attached a page of educational information about schizophrenia. Id. at 3. The court has not heard from the plaintiff since that date.

The court has no factual or legal basis to consider or grant the plaintiff's requests. The plaintiff has not sued the Milwaukee County Transit System or Senator Johnson. The court cannot enjoin a non-party. See Fed. R. Civ. P. 65. Even if the plaintiff had raised valid claims against the defendants she sued, it is too soon for the court to order parties to exchange, or turn over, documents. There is no reason for the court to stay these proceedings, because the plaintiff has not stated valid claims.

## V. Plaintiff's Motion to Appoint Counsel and for Extension of Time

Finally, the plaintiff filed in both cases a motion asking the court to appoint a lawyer to represent her, and to extend the time for filing her magistrate consent form (which she since has filed). Dkt. No. 4. The plaintiff explains that she is trying to "show extorted research via racketeering methods used by the defendants." Id. at 1. She attached a list of her research (including fish behavior, volcanoes, lightening, wasps, bees and ants) and says that she is homeless because of Clinton and Obama. Id. at 2.

On April 9, 2018, the plaintiff filed a letter addressed to Attorney Katie Jelenchik, asking Jelenchik to represent her. Dkt. No. 8. The plaintiff does not say whether she sent this letter to Attorney Jelenchik or received a response. Id.

In a civil case, the court may recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person must make reasonable efforts to hire private counsel on her own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). In this district, a person can satisfy this requirement by demonstrating that she has contacted three or more lawyers who declined to represent her. She can demonstrate that she contacted the lawyers by providing the court with (1) the attorneys' names, (2) their addresses, (3) the date and way the plaintiff attempted to contact them, and (4) the attorneys' responses. Once the plaintiff demonstrates that she has made reasonable attempts to hire counsel on her own, the court must decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). To decide that, the court looks not only at the party's ability to try her case, but also at her ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id.

"[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

The plaintiff has not demonstrated that she tried to find counsel on her own, but that is not the main reason the court will deny the plaintiff's motion. The court has found that the complaint states fantastic, unbelievable claims, that it violates the Federal Rules of Civil Procedure and that it does not allege violations of the federal Constitution or laws. There are no valid claims here with which a lawyer could help the plaintiff. The court must dismiss the case.

## VI. Conclusion

This court **GRANTS** the plaintiff's request to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES** the plaintiff's motion to appoint counsel. Dkt. No. 4.

The court **DENIES** as moot the plaintiff's motion for extension of time to file the magistrate consent form. Dkt. No. 4.

The court **DENIES** the plaintiff's petitions and requests. Dkt. Nos. 6, 7, 11, 17, 24. The court **DENIES** the plaintiff's requests to amend the complaint. Dkt. Nos. 9, 10, 12-14, 23, 25.

The court **ORDERS** that this case is **DISMISSED AS FRIVOLOUS**.

Dated in Milwaukee, Wisconsin this 14th day of March, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**